IN THE UNITED STATES COURT OF APPEAL
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

vs.　　　　　　　　　　　　　　　　　　　　　　Case No. 23-12586

FOSTER D. JOHNSON,
        Defendant-Appellant.

**APPELLANT'S UNOPPOSED MOTION TO STAY
THE BRIEFING SCHEDULE
PENDING THE SUPREME COURT'S DECISION IN *RAHIMI***

As required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the following persons have an interest in the outcome of this case:

Bolitho, Zachary C.: Magistrate Judge

Coody, Jason: U.S. Attorney

Callahan, Jennifer: Assistant U.S. Attorney

Dancy, Phylicia: U.S. Probation Officer

DeBelder, Joseph F.: Federal Public Defender

Johnson, Foster: Defendant/Appellant

Lockhart, Randall: Assistant Federal Public Defender

Summa, Richard M.: Assistant Federal Public Defender

1

Wetherell, Kent T.: U.S. District Court Judge

## APPELLANT'S UNOPPOSED MOTION TO STAY
## THE BRIEFING SCHEDULE
## PENDING THE SUPREME COURT'S DECISION IN *RAHIMI*

Appellant, Foster D. Johnson, through undersigned counsel and pursuant to Fed. R. App. P. 27(a)(1) and Eleventh Circuit Rule 27-1(d), respectfully moves this Court, with no objection by the government, to stay the briefing schedule in this case until the Supreme Court issues its decision in *United States v. Rahimi*, 143 S. Ct. 2688 (No. 22-915) (cert. granted June 20, 2023). In support thereof, Mr. Johnson states:

1.  On May 5, 2023, the district court accepted Mr. Johnson's plea of guilty to two offenses: (1) possession with intent to distribute cocaine, hydrocodone and marijuana, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C) and 841(b)(1)(D), and (2) possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (ECF 36, 40, 48).

2.  On August 2, 2023, the district court sentenced Johnson to a total term of 96 months in prison. (ECF 48—p 2).

3.  Mr. Johnson's initial brief is due to be filed on November 13, 2023. On appeal, Mr. Johnson will argue, *inter alia*, that § 922(g)(1) is unconstitutional both facially, and as applied to his predicate non-violent felony traffic offense (driving

2

with suspended license (repeat offender)), under the new Second Amendment methodology set forth in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). That methodology dictates that under Step One of Second Amendment analysis, the Court may only consider the "plain text" of the Second Amendment and must determine whether the conduct criminalized is covered, and whether the defendant is among "the people" whom the Second Amendment protects. If so, then as per *Bruen*, the conduct is "presumptively protected," the statute is presumptively unconstitutional, and the burden shifts to the government at Step Two of the analysis to affirmatively prove that the statute in question is "consistent with the Nation's historical tradition of firearm regulation" dating to the Founding. *Bruen*, 142 S.Ct. at 2126-27, 2129-30.

4. In *Rahimi*, the Supreme Court will decide a related facial Second Amendment challenge to 18 U.S.C. § 922(g)(8) under *Bru*en's new methodology.

5. Notably, on July 14, 2023, this Court vacated the first panel decision to apply *Bruen*—*National Rifle Ass'n, et. al v. Bondi*, 61 F.4th 1317 (11th Cir. 2023)—and set *Bondi* to be reheard en banc. 72 F.4th 1346 (11th Cir. July 14, 2023) (No. 21-12314). That order was significant for all *Bruen* cases in this Circuit. Indeed, the plaintiffs-appellants in *Bondi* argued in their petition, and presumably a majority of

3

the Court agreed by granting rehearing en banc, that:

> The panel's framework for determining the scope of the Second Amendment raises "issues of important systemic consequences for the development of the law and the administration of justice" warranting this Court's en banc review. *See Watson v. Geren*, 587 F.3d 156, 160 (2d Cir. 2009) (en banc) (per curiam). This appeal is the first time a panel of this Court has applied *Bruen* to a Second Amendment claim. For the reasons demonstrated above, the Opinion is contrary to *Bruen*. Unless corrected through en banc review, the Opinion will remain binding precedent on the Courts in this Circuit deciding future Second Amendment claims.

(ECF 68-1:15).

6. Moreover, on July 21st—one day after vacating the *Bondi* panel opinion—this Court issued an order in *Bondi* effectively staying all proceedings in that appeal until after the decision issues in *Rahimi*. Specifically, the Court ordered that the en banc briefing commence forty (40) days after the Supreme Court issues its opinion in *Rahimi*.

7. Consistent with the staying of the briefing schedule in *Bondi* pending *Rahimi*, the Court has also stayed the briefing schedule pending *Rahimi* in a number of appeals challenging the constitutionality of § 922(g)(1) under *Bruen*. *See* Order of Aug. 11, 2023, *United States v. Gray*, No. 23-10247 (ECF 32) (staying the briefing schedule pending the Supreme Court's decision in *Rahimi*; directing that the appellant's reply brief be filed thirty days from the date of the decision in *Rahimi*);

Order of August 16, 2023, *United States v. Johnson*, No. 21-14144 (ECF 45) (same); Order of August 21, 2023, *United States v. Sheely*, No. 22-13500 (ECF 41) (same); Order of August 22, 2023, *United States v. Washington*, No. 22-12759 (ECF 34) (same); Order of August 30, 2023, *United States v. Perez-Quibus*, No. 10465 (ECF 34) (same).

In so ruling upon motions for reconsideration in *Gray* and *Johnson*, and upon an initial motion for a stay in *Sheely* and *Washington*, the Court implicitly rejected the government's argument in opposition in those four cases that *Rahimi* will not address or even possibly impact issues relevant to the constitutionality of § 922(g)(1) after *Bruen*. In *Perez-Quibus*, notably, the government no longer opposed the stay, but instead "took no position," and the stay was immediately granted.

Most recently, in *United States v. Kerney*, No. 23-11614, the Court granted Kerney's similar unopposed motion to stay the briefing schedule pending the Supreme Court's disposition of *Rahimi*. *See Kerney*, Order of Sept. 29, 2023.

8. It would be prudent in this case—just as in *Bondi*, *Kerney*, *Gray*, *Johnson*, *Sheely*, *Washington*, and *Perez-Quibus*—to await the Supreme Court's decision in *Rahimi* before engaging in any briefing on *Bruen*. Indeed, *Rahimi* will likely resolve many if not all of the fundamental issues relevant to determination of whether §

5

922(g)(1) is unconstitutional after *Bruen*, by deciding:

> (1) Does the statement in *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," *id.* at 626, and the mention in both *Heller* and *Bruen* that the plaintiffs were "law-abiding" citizens, have any relevance after *Bruen* on the "plain text" question of who is included in "the people" at *Bruen* Step One, or the "historical tradition" question at *Bruen* Step Two? and
>
> (2) If not, for *Bruen* Step Two, depending upon whether the societal problem at issue existed or was "unimaginable" at the Founding, in what respects must the government prove Founding-era statutes are similar; and relatedly, at what level of generality or specificity is a "historical tradition" ultimately defined?

9. The first question will likely be addressed—and the circuit conflict on that issue definitively resolved—by the Supreme Court in *Rahimi*, notwithstanding the Solicitor General's effort to occlude the conflict by conclusorily referring to the cited statements in *Heller* and *Bruen* as "holdings." *See* Gov't Merits Brief, *United States v. Rahimi*, No. 22-915) (U.S. Aug. 14, 2023) ("*Rahimi* merits brief"), at 11-12.

At one end of the circuit divide on this point lies the Fifth Circuit in *Rahimi*, which effectively treated the cited statements in *Heller* and *Bruen* as binding, even while rejecting the government's position that "the people" in the plain text of the Second Amendment only includes "law-abiding, responsible citizens." Specifically, the Fifth Circuit drew a distinction for *Bruen* Step One between

6

individuals subject to a civil restraining order and felons convicted of a crime, and found that "Rahimi, while hardly a model citizen, is nonetheless among 'the people' entitled to the Second Amendment's guarantees, all other things equal"—explaining that "*Heller*'s reference to 'law-abiding responsible' citizens meant to exclude from the Court's discussion groups that have been historically stripped of their Second Amendment rights, *i.e.*, groups whose disarmament the Founders 'presumptively' tolerated or would have tolerated'"—namely, convicted felons. *United States v. Rahimi*, 61 F.4th 443, 451-53 (5th Cir. 2023), *cert. granted*, 2023 WL 42478450 (U.S. June 30, 2023) (No. 22-915).

Notably, though, as support for its view that both *Heller* and *Bruen* supported a finding that "criminals, as a group, 'fall[] outside the "the people,"'" the Fifth Circuit cited the Third Circuit's now-vacated panel opinion in *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022). *See Rahimi*, 61 F.4th at 452 (citing *Range*, 53 F.4th at 274). But after *Rahimi* was decided, every member of the en banc Third Circuit, including the original *Range* panel members, disavowed that view—by either expressly agreeing or not disputing that, to the contrary, the government's continually-emphasized language from *Heller* and *Bruen* is non-binding "dicta," and felons are indeed part of "the people" for purposes of *Bruen* Step One. *See*

7

*Range v. Attorney General*, 69 F.4th 96, 101-03 (3d Cir. 2023) (en banc) (majority opinion, explaining that since the criminal histories of the plaintiffs in *Heller* and *Bru*en "were not at issue in those cases, their references to 'law-abiding, responsible citizens' were dicta;" "while we heed that phrase, we are careful not to overread it as we and other circuits did with *Heller*'s statement that the District of Columbia firearm law would fail under any form of heightened scrutiny;" noting with significance that *Helle*r recognized that "the people" was a phrase used in several other amendments and included "all Americans" "not an unspecified subset;" holding that there was "no reason to adopt an inconsistent reading of 'the people,'" and therefore, felons were part of "the people"); *id.* at 106-08, 109-10, 114, n. 1, 116-138, and 138-41 (concurrences and dissents either expressly agreeing with the *Range* majority on that point, or not disputing it, even if disagreeing on other points).

As such, even though the government has attempted to further occlude this direct circuit conflict by avoiding any mention of *Range* in the *Rahimi* merits brief, and transferring the "law-abiding, responsible citizens" argument made to the Fifth Circuit from *Bruen* Step One to *Bruen* Step Two, this Court should most definitely expect *Rahimi* to address the newly-articulated view of the en banc Third Circuit that the government's continually-emphasized statements from *Heller* and *Bruen* are

8

simply dicta, not the "holdings" of those cases. Although the government has not brought up *Range* in its *Rahimi* merits brief, Rahimi and his amici undoubtedly will in response.

Ultimately, in order to accept or reject the government's "law-abiding, responsible citizens" Step Two argument in *Rahimi*, the Supreme Court will have to definitively resolve whether the *Heller* statement about "longstanding prohibitions" against felons possessing firearms, and the references to the fact that the plaintiffs in both *Heller* and *Bruen* were "law-abiding citizens" have any relevance after *Bruen*—either on the Step One "plain text" question of who is included in "the people" covered by the Second Amendment, or in the historical tradition inquiry mandated for Step Two.

10.   And indeed, even though the government claims in its *Rahimi* merits brief at 28-29 that the Court "need not" "determine the full scope of the 'law-abiding, responsible citizens' principle to resolve this case," it actually prods the Court to address these broader questions by repeatedly asserting as a fact—rather than as an issue intensely in dispute after *Bruen*—that Congress may indeed disarm persons who are not law-abiding, like felons. *Id.* at 28; *see also id.* at 37 ("history and tradition establish that the Second amendment allows legislatures to disarm

9

persons," such as "criminals," "who are not law-abiding, responsible citizens, regardless of whether they are among 'the people'"); *id.* at 38 ("the Amendment allows Congress to disarm felons," citing *Heller*, 554 U.S at 626); id. at 43 ("this Court has approved" "laws disarming 'felons,'" citing *Heller,* 554 U.S at 626). By referring to what many jurists (including the entire Third Circuit) have characterized as "dicta," as the actual "holding" of both *Heller* and *Bruen*, the government—by its overstated assertions in its *Rahimi* merits brief—will be challenged by Rahimi and amici in their briefs. And that should prompt the Court to speak definitively one way or the other on this point.

11. On the second question outlined above, *Rahimi* will—by necessity—clarify how *Bruen*'s new rules on the government's burden to establish a consistent "historical tradition," apply to other firearm statutes like § 922(g)(1). For indeed, some of the precise *Bruen* Step Two arguments the government has made in other § 922(g)(1) cases, have been made in *Rahimi* as well.

For instance, in its petition for writ of certiorari in *Rahimi*, the government argued that "[s]ome early laws categorically disarmed entire groups deemed dangerous or untrustworthy, such as those who refused to swear allegiance," and a few of the state ratifying convention proposals "likewise suggest that legislatures

10

may disarm certain categories of individuals, including those who are dangerous." Gov. Pet. for Cert., *United States v. Rahimi*, 2023 WL at 2600091, at *9 (22-915) (U.S. Mar. 17, 2023).

And in its just-filed merits brief in *Rahimi*, the government has made these very same arguments again. *See Rahimi* merits brief at 17-18 (arguing for the significance of two rejected ratifying convention proposals) and 22-23 (same as to provisions disarming loyalists during the Revolutionary and post-Revolutionary period).

As such, it should be expected that these arguments will not only be squarely addressed by the Supreme Court in *Rahimi*, but indeed, that the Court will clarify the details of the Step Two methodology, and what is required for the government to meet its burden of affirmatively proving a consistent "historical tradition" or similar regulation since the Founding.

12. The Fifth Circuit, using "analogical reasoning" under the "relevantly similar" standard (presumably, because it viewed domestic violence as a recently-recognized problem), squarely rejected the government's reliance upon both loyalty statutes and never-adopted ratification conviction proposals. *See United States v. Rahimi*, 61 F.4th 443, 456-57 (5th Cir. 2023) (holding that loyalty statutes fail as

11

analogues to § 922(g)(8), "because out of the gate, *why* they disarmed people was different," namely, "the preservation of political and social order;" and the proffered proposals from state ratifying convictions were "not reflective of the Nation's early understanding of the scope of the Second Amendment right" because they were ultimately rejected; they did not become part of the Second Amendment's text).

If the Supreme Court agrees with the Fifth Circuit on these points, this Court would have to reject the similar analogies offered by the government to uphold § 922(g)(1).

13.     Because § 922(g)(1) is aimed at a "general societal problem that has persisted since the 18th century," namely, interpersonal gun violence, *Bruen*'s narrower "distinctly similar" standard rather than the more flexible "relevantly similar" standard (limited to societal problems "unimaginable" at the Founding, for which "analogical reasoning" is permitted), should govern this case. *See Bruen*, 142 S.Ct. at 2131. While the government has consistently urged application of analogical reasoning in § 922(g)(1) cases, if the Supreme Court agrees with the Fifth Circuit that the "relevantly similar" standard applies to § 922(g)(8), pursuant to that standard, any purported "analogue" must have the same "relevant metrics" (at the

very least, the same "*how*" and "*why*," and thus have imposed a "comparable burden" that was "comparably justified." *Bruen*, 142 S.Ct. at 2132-33). And then, the Court in *Rahimi* will need to further clarify proper application of this "how" and "why," and what a comparable burden/comparable justification actually means.

Because the government has argued for application of the "relevantly similar" standard in § 922(g)(1) cases, if the Court ultimately upholds the Fifth Circuit's application of that standard in *Rahimi*, that could undercut most or even all, of the government's *Bruen* Step Two arguments for upholding § 922(g)(1). *See United States v. Range*, 69 F.4th at 103-05 (holding that all of the government's purported analogies to older laws failed because none was a status-based restriction *for life*).

Relatedly, the Court will also need to clarify in *Rahimi* the level of generality or specificity at which a historical "tradition" must be defined. In distinguishing each class of regulations/proposals the government proffered in *Rahimi*, the Fifth Circuit implicitly rejected the government's assumption that a historical "tradition" may be defined at a high level of generality (*e.g.*, a tradition of disarming dangerous or unvirtuous people is sufficient). If the Supreme Court rejects that assumption by the government in *Rahimi*, that will further undercut the government's *Bruen* Step Two position vis-a-vis § 922(g)(1).

Resolution of these issues in *Rahimi* could prove case-dispositive for either party on the Second Amendment challenge here, or at least narrow the issues for this Court to ultimately resolve with regard to § 922(g)(1).

14. Notably, one of the reasons the government urged the Supreme Court to grant review on an expedited basis in *Rahimi*, even without a circuit conflict on the constitutionality of § 922(g)(8), is that (in the government's view): "The Fifth Circuit treated even minor and immaterial distinctions between historical laws and their modern counterparts as a sufficient reason to find the modern laws unconstitutional. If that approach were applied across the board, few modern statutes would survive judicial review." *Rahimi* Cert, 2023 WL 2600091, at *15.

And in its merits brief in *Rahimi*, the government has continued to underscore the expansive impact the Supreme Court's decision will have if the Fifth Circuit's approach is upheld. *See* Gov't Merits Brief, *Rahimi* at 37-38 (arguing that "the Fifth Circuit's rejection of the 'law-abiding, responsible citizens' principle" "leads to untenable consequences" such as the Fifth Circuit's recent decision in *United States v. Daniels*, 2023 Wl 5091317, at *1, *4 (5th Aug. 9, 2023) under 18 U.S.C. § 922(g)(3), holding that Congress lacks the power to disarm a habitual drug user who was not using drugs at the time of arrest; also noting that in *United States v.*

14

*Bullock*, 2023 WL 4232309 (S.D. Miss. June 28, 2023), a decision under § 922(g)(1), a district court within the Fifth Circuit held that Congress lacked the power to *permanently* disarm a felon with very old convictions for manslaughter and assault, when he had completed his sentence fifteen years prior).

Given the Solicitor General's express argument in the *Rahimi* merits brief that "affirming the Fifth Circuit's decision here could thus wreak havoc on other parts of 922(g)," *id.* at 38, and specific citation of *Bullock* for that point, the government cannot reasonably argue any longer that *Rahimi* will have no impact on a *Bruen* challenge to § 922(g)(1).

15. Because *Rahimi* will likely clarify *Bruen*'s applicability to § 922(g)(1) in multiple key respects, it makes sense to stay the briefing schedule here—as in *Kerney*, *Gray*, *Johnson*, *Sheely*, *Washington*, and *Perez-Quibus*—and await the Supreme Court's decision in *Rahimi* before briefing commences. Notably, other courts in the country have rightly recognized that *Rahimi* will necessarily impact other *Bruen* cases, including the identical post-*Bruen* challenge to § 922(g)(1) to be raised here. Accordingly, they have either implicitly or explicitly held those appeals in abeyance pending *Rahimi*. Of particular note is the recent order of the D.C. Circuit in *United States v. Parker*, Case No. 22-3030 (D.C. Cir. July 25, 2023),

15

granting an appellant's unopposed motion to hold in abeyance an appeal—like this one—challenging § 922(g)(1) as unconstitutional under the Second Amendment after *Bruen*.

16.  As noted above, the undersigned has consulted with counsel for the government, Assistant United States Attorney Robert G. Davies, and is authorized to state the government has no objection to this motion.

17.  Mr. Johnson is incarcerated serving the 96-month sentence imposed by the district court.  This request to stay the briefing schedule is not for delay, but rather to render effective assistance to Mr. Johnson, conserve resources, and further judicial economy.  Neither the parties nor the Court would be harmed by a stay entered here.

WHEREFORE, Mr. Johnson asks the Court to stay the briefing schedule in this case pending the Supreme Court's decision in *Rahimi*.  If the Court grants the requested stay, he respectfully requests that the Court allow him 40 days from the issuance of the decision to file his Initial Brief.

If the Court denies the requested stay, Mr. Johnson respectfully requests that the Court permit him to file his Initial Brief 40 days after the order denying the stay.

Respectfully submitted,

**JOSEPH F. DEBELDER**
FEDERAL PUBLIC DEFENDER

*s/Richard M. Summa*
**RICHARD M. SUMMA**
Assistant Federal Public Defender
Florida Bar No. 890588
227 N. Bronough Street, Suite 4200
Tallahassee, FL  32301
Phone (850) 942-8818
Fax (850) 942-8809
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(1)(E) & 32(a)(5) & (6).  This motion contains 3,282 words.

*s/Richard M. Summa*
**RICHARD M. SUMMA**
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing has been furnished by United States Mail to Assistant United States Attorney Robert G. Davies, 21 East Garden Street, Suite 400, Pensacola, FL 32502; and to Mr. Foster D. Johnson, Reg. No. 32263-510, FCI Coleman, Medium, P.O. Box 1032, Coleman, FL 33521, this 16th day of October, 2023.

*s/Richard M. Summa*
**RICHARD M. SUMMA**
Assistant Federal Public Defender
