No. 23-12586

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

### FOSTER D. JOHNSON,
*Defendant-Appellant.*

_____

A Direct Appeal of a Criminal Case
From the United States District Court
for the Northern District of Florida, Pensacola Division

_____

### INITIAL BRIEF OF APPELLANT

**JOSEPH F. DEBELDER**
Federal Public Defender
Northern District of Florida
Florida Bar No. 193800
227 N. Bronough Street, Ste. 4200
Tallahassee, Florida 32301
Telephone: (850) 942-8818
FAX: (850) 942-8809
joseph_debelder@fd.org

Attorney for Appellant

No. 23-12586

United States v. Foster D. Johnson

**AMENDED CERTIFICATE OF INTERESTED PERSONS**

As required by Federal Rule of Procedure 26.1 and 11th Cir. Rule 26.1-2, the

following persons have an interest in the outcome of this case:

Bolitho, Zachary C.: United States Magistrate Judge

Coody, Jason: United States Attorney

Callahan, Jennifer: Assistant United States Attorney

Dancy, Phylicia: United States Probation Officer

Davies, Robert G.: Assistant United States Attorney **(added)**

DeBelder, Joseph F.: Federal Public Defender

Johnson, Foster: Defendant/Appellant

Lockhart, Randall: Assistant Federal Public Defender

Summa, Richard M.: Assistant Federal Public Defender

Wetherell, Kent T.: United States District Court Judge

## STATEMENT REGARDING ORAL ARGUMENT

Appellant leaves oral argument to the discretion of the Court.

# TABLE OF CONTENTS

AMENDED CERTIFICATE OF INTERESTED PERSONS .......................C1of 1

STATEMENT REGARDING ORAL ARGUMENT ..............................................i

TABLE OF CONTENTS ....................................................................................ii

TABLE OF CITATIONS ....................................................................................v

STATEMENT OF JURISDICTION....................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE ............................................................................3

    (i) Course of Proceedings and Disposition in the Court Below.........................3

    (ii) Statement of the Facts ...............................................................................4

    (iii) Standards of Review ...............................................................................13

SUMMARY OF THE ARGUMENT .................................................................15

ARGUMENT......................................................................................................18

## ISSUE I

The district court imposed a procedurally unreasonable
sentence when it prevented Johnson from articulating, and
refused to consider, his objection regarding the allegations
of his prior battery convictions; allegations which the court
gave great weight in determining Johnson's sentence. ......................18

A.      The legal framework ...............................................20

B.      The district court procedurally erred by failing to allow
        Johnson to articulate his objection and failing to consider
        Johnson's objection..................................................22

C.      The case should be remanded for resentencing. ......................24

## ISSUE II

The district court imposed a substantively unreasonable
sentence when it imposed a top of the Guidelines sentence
based, in substantial part, on inaccurately weighed
sentencing factors. ............................................................25

A.      The district court improperly gave significant weight to
        disputed, unsubstantiated, and unreliable allegations in
        the PSR regarding Johnson's prior battery convictions. ..........26

B.      The district court gave no consideration to Johnson's
        serious medical health conditions...........................................28

## ISSUE III

The trial court erred, plainly, when it imposed a judgment
of conviction for the offense of possession of a firearm by a
convicted felon, in violation of 18 U.S.C. § 922(g)(1),
because it lacked jurisdiction to do so as the statute violates
the Second Amendment as applied to Johnson's non-violent
prior Florida felony driver's license convictions. ..............................30

A.      The Second Amendment's "plain text" covers
        Johnson's conduct. ...................................................... 31

iii

B.    The government cannot show that 18 U.S.C. § 922(g)(1), as applied to non-violent felony convictions for driver's license offenses, is consistent with America's "tradition of firearms regulation." ........................................................ 33

C.    In light of *Rahimi*, *Rozier* and *Dubois* are incorrectly decided. ................................................................. 34

D.    The error was plain. ................................................. 37

CONCLUSION ........................................................................ 38

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ................................................................. 39

CERTIFICATE OF SERVICE ................................................. 40

# TABLE OF CITATIONS

**Cases**

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ................................................................ 32, 35, 36

*Erlinger v. United States,*
  144 S. Ct. 1840 (2024) ................................................................ 21, 27

*Gall v. United States,*
  552 U.S. 38 (2007) ...................................................................... 13, 26

*\*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
  597 U.S. 1 (2022) .........................................16, 17, 30, 31, 32, 33, 34, 35, 36, 37

*Range v. Att'y Gen. U.S.,*
  69 F.4th 96 (3rd Cir. 2023), *cert. granted, judgment vacated sub nom.*
  *Garland v. Range,* No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024) ...............34

*Shepard v. United States,*
  544 U.S. 13 (2005) .................................................................. 21, 22, 27

*United States v. Aguilar-Ibarra,*
  740 F.3d 587 (11th Cir. 2014) ............................................................ 15

*United States v. Bolatete,*
  977 F.3d 1022 (11th Cir. 2020) .......................................................... 13

*United States v. Clarke,*
  836 F. App'x 818 (11th Cir. 2020) ....................................................... 21

*United States v. Corbett,*
  921 F.3d 1032 (11th Cir. 2019) .......................................................... 21

*United States v. Correy,*
570 F.3d 373 (5th Cir. 2009) .............................................................. 22

*United States v. Dantzler,*
771 F.3d 137 (2d Cir. 2014) ........................................................... 22, 27

*United States v. Dubois,*
94 F.4th 1284 (11th Cir. Mar. 5, 2024) ............................ 16, 17, 21, 30, 34, 35, 36

*United States v. Fox,*
925 F.3d 1275 (11th Cir. 2019) ...................................................... 13, 26

*United States v. Funt,*
896 F.2d 1288 (11th Cir. 1990) ........................................................... 21

*United States v. Grushko,*
50 F.4th 1 (11th Cir. 2022) .................................................................26

*United States v. Irey,*
612 F.3d 1160 (11th Cir. 2010) ........................................... 13, 25, 26, 29

*United States v. Jimenez-Shilon,*
34 F.4th 1042 (11th Cir. 2022) ...........................................................32

*United States v. Jones,*
856 F.2d 146 (11th Cir. 1988) ............................................................ 21

*United States v. Jones,*
899 F.2d 1097 (11th Cir. 1990) .......................................................20, 24

*United States v. Madden,*
733 F.3d 1314 (11th Cir. 2013) .......................................................... 37

*United States v. Margarita,*
906 F.3d 1255 (11th Cir. 2018) ...........................................................14

vi

*United States v. Parkerson,*
   984 F.3d 1124 (5th Cir. 2021) ............................................................... 22

*United States v. Pugh*,
   515 F.3d 1179 (11th Cir. 2008) ...............................................................26

*United States v. Rahimi,*
   144 S. Ct. 1889 (2024).......................................... 16, 17, 30, 31, 32, 34, 35, 36, 37

*United States v. Rosales-Bruno*,
   676 F.3d 1017 (11th Cir. 2012) .............................................................. 22

*United States v. Rozier,*
   598 F.3d 768 (11th Cir. 2010) ...................................................17, 30, 34, 35, 36

*United States v. Thomas,*
   571 F. App'x 820 (11th Cir. 2014) ......................................................... 13

*United States v. Tucker,*
   404 U.S. 443 (1972) ................................................................................ 21

*United States v. Valera,*
   622 F. App'x 876 (11th Cir. 2015) ........................................................ 20

*United States v. Williams,*
   No. 23-6115 (6th Cir., August 23, 2024) ..............................................37

*United States v. Zuniga,*
   720 F.3d 587 (5th Cir. 2013) .................................................................. 22

**Statutes**

18 U.S.C. § 922(g)(1)................... 2, 16, 17, 30, 32, 33, 34, 35, 37

18 U.S.C. § 922(g)(9).................................................................3

18 U.S.C. § 924(a)(8).................................................................3

18 U.S.C. § 3231........................................................................1

18 U.S.C. § 3553(a)............................... 13, 15, 16, 25, 28, 29

18 U.S.C § 3553(a)(1)........................................................26, 28

18 U.S.C. § 3553(2)(D)........................................................... 28

21 U.S.C. § 841(a)(1)................................................................3

21 U.S.C. § 841(b)(1)(C)...........................................................3

21 U.S.C. § 841(b)(1)(D)...........................................................3

28 U.S.C. § 1291........................................................................1

**Rules**

Fed. R. App. P. 32(a)(5).........................................................39

Fed. R. App. P. 32(a)(6).........................................................39

Fed. R. App. P. 32(a)(7)(B)...................................................39

USSG § 2D1.1........................................................................ 6

USSG § 2D1.1(b)(1)...............................................................7

USSG § 2D1.1(b)(2)...............................................................7

USSG § 3C1.1 ................................................................................................7

**Other Authorities**

United States Constitution; Second Amendment ...........16, 17, 30, 31, 32, 36, 37, 38

## STATEMENT OF JURISDICTION

The United States District Court, Northern District of Florida, Pensacola Division, had jurisdiction pursuant to 18 U.S.C. § 3231. Following entry of a guilty plea, ECF 36, the district court orally imposed judgment and sentence on July 27, 2023, ECF 58, and entered written judgment and sentence on August 2, 2023. ECF 48. Appellant timely filed a notice of appeal on August 9, 2023. ECF 51. This appeal is from a final judgment or order that disposes of all parties' claims. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides that the court of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States except where a direct review may be taken to the Supreme Court.

# STATEMENT OF THE ISSUES

## ISSUE I

The district court imposed a procedurally unreasonable sentence when it prevented Johnson from articulating, and refused to consider, his objection regarding the allegations of his prior battery convictions; allegations which the court gave great weight in determining Johnson's sentence.

## ISSUE II

The district court imposed a substantively unreasonable sentence when it imposed a top of the Guidelines sentence based, in substantial part, on inaccurately weighed sentencing factors.

## ISSUE III

The trial court erred, plainly, when it imposed a judgment of conviction for the offense of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), because it lacked jurisdiction to do so as the statute violates the Second Amendment as applied to Johnson's non-violent prior Florida felony driver's license convictions.

## STATEMENT OF THE CASE

### (i)    Course of Proceedings and Disposition in the Court Below

On November 15, 2022, the Grand Jury for the United States District Court, Northern District of Florida, Pensacola Division, returned a three-count Indictment against Appellant Johnson. ECF 1.

In Count I, Foster D. Johnson was charged with knowing possession with intent to distribute controlled substances, i.e., crack cocaine, hydrocodone, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(1)(D).

In Count II, Johnson was charged with possession of a firearm and ammunition knowing he had been previously convicted of a felony. ECF 1, pp. 1-2. The Indictment cited Johnson's 2020 Florida state felony conviction for driving while license suspended—habitual offender. ECF 1, p. 2.

In Count III, Johnson was charged with possession of a firearm and ammunition knowing he had been previously convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(8). ECF 1, pp. 2-3.  The Indictment alleged Johnson had been convicted in a Florida court for the offense of "Battery" and "Battery—Touch or Strike." ECF 1, p. 3.

Pursuant to an agreement with the government, Johnson pled guilty to Counts I and II. ECF 36. The government further agreed to dismiss Count III. ECF 36.

At sentencing, the district court determined Johnson was subject to an advisory Guidelines range of 77-96 months in prison. PSR ¶ 126; ECF 58, p. 18. The district court sentenced Johnson to concurrent terms of 96 months in prison on Counts I and II, followed by concurrent terms of supervised release for three years on each count. ECF 48, pp. 2, 3. Johnson timely filed a notice of appeal on August 9, 2023. ECF 51.

This is the direct appeal of a felony judgment and sentence of imprisonment. Appellant is incarcerated.

**(ii)  Statement of the Facts**

*The Plea*

After initially entering a plea of not guilty, ECF 10, Foster D. Johnson, appearing before United States Magistrate Judge Bolitho for a change of plea hearing, entered a guilty plea to Counts I and II. ECF 34; ECF 57, p.24. Johnson agreed to plead guilty to Counts I and II and the government agreed to move to dismiss Count II at sentencing. ECF 36, pp. 1-2. Johnson waived all constitutional rights attendant to trial, and the government agreed not to file any other charges

arising out of the same transactions or occurrences to which he pled guilty. ECF 36, pp. 2-4. The parties agreed sentencing was at the discretion of the district court, considering the Sentencing Guidelines and the statutory maximum and minimum sentences. *Id.* p. 4-5. The parties reserved the right to appeal any sentence imposed. *Id.* p. 5. Magistrate Judge Bolitho recommended the district court accept the guilty pleas and ordered the preparation of a Presentence Investigation Report (PSR). ECF 57, pp. 25-26. The district court accepted the guilty pleas. ECF 40.

Appellant Johnson's guilty plea was supported by a written Factual Basis for Guilty Plea. ECF 37. Escambia County Sheriff's Deputies responded to Johnson's residence on the report of a "shots-fired disturbance." ECF 37, p. 1. Johnson's wife reported he had fired a gun inside the home during an argument. ECF 37, p. 1. Because Johnson's whereabouts were unknown, officers performed a protective sweep of the residence. ECF 37, p. 1. The officers observed a shotgun behind Johnson's bed, and an apparent bullet hole in the drywall in the upstairs hallway. ECF 37, pp. 1-2.

Officers obtained a warrant to search the residence. ECF 37, p. 2. As a result of the subsequent search, officers also discovered the following items in Johnson's bedroom: 18.5 pounds of marijuana; 9.26 grams of cocaine base; 28 hydrocodone

tablets weighing 11.87 grams; a black 12-gauge shotgun; a digital scale; and gallon-sized bags. ECF 37, p. 2.  In other areas of the home officers found a Smith & Wesson .40 caliber handgun; a .40 caliber Federal Cartridge shell casing; a live .40 caliber round of ammunition located in the second-floor hallway; "a bullet hole in the wall and an associated projectile located in the dryer in the laundry room"; and a box of Federal and Hornady .40 caliber ammunition. ECF 37, p. 2.

Johnson had been previously convicted of felony "Driving While License Revoked Pursuant to Habitual Offender" on November 18, 2020. ECF 37, p. 2. Johnson was arrested on the scene. ECF 37, p. 2. After waiving his *Miranda* rights, Johnson admitted possessing the firearms.  He was aware of his status as a convicted felon and knew his rights to possess firearms had not been restored. ECF 37, p. 3. He acknowledged the substances found in his bedroom were marijuana, hydrocodone, and cocaine. ECF 37, p. 3. Johnson "knowingly and intentionally possessed said substances with the intent to distribute them." ECF 37, p. 3.

### *Presentence Report*

The probation office prepared a PSR. ECF 45. The probation officer applied a base offense level of 18, pursuant to USSG § 2D1.1 finding Johnson possessed at least 40 kilograms but less than 60 kilograms of converted drug weight (CDW). ECF

45, ¶ 45. The offense level was increased by two, pursuant to USSG § 2D1.1(b)(1), because a firearm was possessed. ECF 45, ¶ 46. The offense level was again increased by two, pursuant to USSG § 2D1.1(b)(2), because of the use of threats of violence. ECF 45, ¶ 47. Finally, the offense level was increased by two, pursuant to USSG § 3C1.1, for obstruction of justice. ECF 45, ¶ 50. The total offense level was determined to be 24. ECF 45, ¶ 54.

Johnson's total criminal history score was 8, establishing a criminal history category of IV. ECF 45, ¶ 76. Johnson's prior felony convictions were for multiple charges of operating a vehicle while licensed revoked pursuant to a habitual offender statute and felony driving while license suspended. ECF 45, ¶¶ 66, 69, 72, 73, and 74. Johnson also had prior misdemeanor battery convictions in 2004 and 2007, for which he had entered nolo contendere pleas. ECF 45, ¶¶ 62 and 65.

A total offense level of 24 and a criminal history category of IV resulted in an advisory Guidelines range of 77 to 96 months in prison. ECF 45, ¶ 126.

The government filed a written objection to the PSR, arguing Johnson's base offense level should be set at 24 rather than 18, based on its calculation of total converted drug weight (CDW). ECF 45, ¶ 154. The defense asserted the appropriate base offense level was 16 or 18. ECF 45, ¶ 155.

At the sentencing hearing the government restated its outstanding objection. ECF 58, pp. 5-11. After hearing the objection, the district court overruled it, finding the argument included "too much math, too many assumptions, [and] too much speculation." *Id*. at pp. 17-18. The district court then adopted the PSR as prepared by probation, other than a correction to paragraph 33, pursuant to the party's agreement, to state the 18 and a half pounds of marijuana was "unpackaged," rather than "packaged." *Id*. at pp. 14, 18.

Johnson then addressed the court. ECF 58, pp. 18-21. He apologized to the district court and his wife and children for the crimes he committed. *Id*. Johnson expressed remorse and took full responsibility for his behavior. *Id*. He also apologized to the federal agents for resisting during arrest. ECF 58, p. 21.

Defense counsel asked the district court to consider several factors while determining Johnson's sentence. ECF 58, pp. 22-34. Counsel argued that the instant case was not the type of case the government typically seeks for federal prosecution and Johnson was not the kind of individual the district court usually has in its courtroom. ECF 58, pp. 22-23. Johnson has not even reached the level of being classified as a street-level dealer and had no prison history. *Id.* Thus, it is a case that

could have been easily prosecuted in state court, where the sentence would have been roughly 11-30 months. ECF 58, p. 23.

Further, the marijuana seized by law enforcement "wasn't high-quality," limiting his ability to obtain a profit, according to agents. ECF 58, p. 24. Johnson was also balancing multiple sources of employment. *Id.* At the time of his arrest, Johnson worked at Big Lots and Family Dollar, as well as his own land-scaping business. *Id.*

Johnson's opportunities were limited by his learning disabilities. ECF 45, ¶ 111; ECF 58, pp. 24-25. While in school, Johnson received services from the Exceptional Students Education Program and had an individualized education plan. *Id.* This prevented Johnson from obtaining a proper high school diploma and he was forced to enter a secondary program, obtaining a "special" diploma, which focused on employment rather than education skills. *Id.* As a graduating senior, Johnson was reading on a second-grade level, spelling on a first-grade level, and his math skills were on a fourth-grade level. ECF 58, pp. 24-25. His special degree introduced him to lawn service, which he has continued doing since 2004. ECF 58, p. 25.

Johnson's decision to distributing drugs was not funneled by wanting to conduct illegal conduct, but to supplement his lawful income to pay the mortgage on

his family home, take care of his and his wife's health, and provide for his family. ECF 58, p. 28.

Defense counsel argued this was a case where the defendant is prosecuted for specific federal charges, yet the PSR has, unfortunately, shifted the entire dynamic of the case. ECF 58, p. 26.

The government argued Johnson was not a low-level marijuana dealer, as he was also dealing hydrocodone and crack cocaine. ECF 58, pp. 33-35. Johnson's criminal history began at the age of 13 and 15 for fighting in public, and age 16 for resisting arrest. ECF 58, p. 36. They highlighted the dangerous nature and circumstances of the instant case. ECF 58, pp. 35-36. The government alleged Johnson to be a danger to the community. ECF 58, pp. 37-38.

### *District court cuts off Johnson as he attempts to dispute prior violence allegations*

After the arguments of counsel, the district court then began to discuss its reasoning for the sentence it intended to impose. ECF 58, p. 40. The district court indicated that it considered Johnson to "have a significantly problematic criminal history." ECF 58, p. 43. The district court indicated it considered Johnson to have a "violence problem" and a "drinking problem" and then stated, "it is no measure of a man to beat a woman, and you have a history of doing that." ECF 58, p. 44.

Upon that statement, Johnson interjected. ECF 58, p. 44. Johnson acknowledged that he made mistakes in this case, however, "for me to sit and be like, okay, you beat your wife – I don't beat my wife." ECF 58, p. 45. The district court then clarified "I'm not talking necessarily – if I said your wife, I'm sorry. **I'm talking about the mother of your children, the ones that you have the convictions for.**" ECF 58, p. 45 (emphasis added).

Johnson then immediately denied the allegations of those convictions and disputed that he ever touched or abused the mother of his children in his 2004 and 2007 convictions. ECF 58, pp. 45-46. Johnson started: "I haven't – I haven't beaten them, one of them. I told them, I say, if y'all could come to court and tell them the truth -- I was young then. I was young. I was scared. I didn't know nothing about a court. I would have fought that all the way to the door. I never put my hands on the women. Only thing I got on my hand is a scar for knocking on my window, on my window. And –-." ECF 58, pp. 45-46.

As Johnson was disputing the factual allegations, however, the district court interjected "I'm reading Mr. -- I'm not going to debate it with you." ECF 58, p. 46.

At that, Johnson complied and said "Oh, no, no." ECF 58, p. 46.

The district court then indicated that it was "looking at paragraph 65 of the PSR, just as an example" and read from the factual allegations contained in the PSR paragraph. ECF 58, p. 46. The district court read allegations that Johnson had "strangled [mother of Johnson's child], pushed her into the closet causing her to hit her head against the wall, and began strangling her again." ECF 58, p. 46. After reading those allegations, the district court told Johnson **"I'm not going to debate whether that happened."** ECF 58, p. 46 (emphasis added). Johnson then acquiesced and said "yes, yes, sir." *Id.*

The district court then continued to discuss the allegations of the current case in conjunction with the allegations from 2007 and explained "…I'm going through this process not to make you feel bad, not to bring up the worst times in your life, but to explain to you, **explain to the appellate court**, explain to the people that are here what I've taken into consideration in evaluating what your sentence is." ECF 58, pp. 46-47 (emphasis added).

The district court imposed a sentence at the top of the Guidelines of 96 months in prison followed by 3 years of supervised release. ECF 58, pp. 51-52. Defense counsel objected to the imposition of a 96-month imprisonment sentence as "higher than it needs to be." ECF 58, p. 54.

### (iii)  Standards of Review

**ISSUE I** – Appellate courts apply an abuse of discretion standard when reviewing a sentence. *Gall v. United States,* 552 U.S. 38, 41 (2007). In determining whether the sentence was procedurally reasonable, an appellate court considers "the district court (1) properly calculated the guideline range, (2) treated the guidelines as advisory, (3) considered the § 3553(a) factors, (4) did not rely on clearly erroneous facts, and (5) adequately explained the chosen sentence." *United States v. Thomas,* 571 F. App'x 820, 821 (11th Cir. 2014) (citing *Gall,* 552 U.S. at 51).

**ISSUE II** – Substantive reasonableness of Johnson's sentence is reviewed for abuse of discretion. *United States v. Fox*, 925 F.3d 1275, 1278 (11th Cir. 2019) (citing *Gall,* 552 U.S. at 41). A district court imposes a substantively unreasonable sentence when it (1) fails to afford consideration to relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010).

**ISSUE III** – Although constitutional challenges are ordinarily reviewed *de novo, see United States v. Bolatete*, 977 F.3d 1022, 1032 (11th Cir. 2020), an

unpreserved challenge is reviewed under the plain error standard. *United States v. Margarita*, 906 F.3d 1255 (11th Cir. 2018).

## SUMMARY OF THE ARGUMENT

In *Issues I* and *II*, the district court imposed an unreasonable sentence both procedurally and substantively. First, the district court prevented Johnson from contesting the factual summaries contained in the PSR and then gave significant weight to those summaries in determining the imposed sentence. Second, the district court inaccurately weighed the relevant sentencing factors under 18 U.S.C. § 3553(a). The district court improperly relied on objected to PSR summaries and failed to give any consideration to Johnson's serious health conditions.

In *Issue I*, the district disregarded and prevented Johnson's objection to unsubstantiated factual narratives in the PSR and improperly gave the objected to statements significant weight in imposing the sentence. According to this Court's precedent, Johnson has a right to object to facts written in the PSR, or else they are deemed to be truthful and can be used in determining the imposed sentence. *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014). The district court impeded this right. Therefore, the district court erred procedurally in not allowing Johnson to object and then, considering those contested facts, imposed a top of the Guidelines sentence.

In *Issue II*, Johnson contends his sentence is substantively unreasonable, due to the district court's error in improperly weighing sentencing factors. First, the district court heavily relied on the disputed, unreliable allegations from the battery priors listed in the PSR. Although consideration of prior convictions is permissible under the § 3553(a) factors, the district could erred substantially in giving the unproven, disputed factual narratives significant weight after Johnson's objection to those narratives. Second, the district court completely failed to consider Johnson's serious health conditions in weighing the sentencing factors.

In *Issue III*, this Court must vacate his conviction in Count II because in light of *Bruen* and *Rahimi*, 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); *United States v. Rahimi,* 144 S. Ct. 1889 (2024). First, the "plain text" of the Second Amendment protects Johnson's conduct of possessing a firearm. Second, the government is unable to meet its burden of showing his convictions for non-violent, driver's license related offenses "[are] consistent with the Nation's historical tradition of firearm regulation." *Id*. Appellant recognizes that this Court has recently affirmed its holding that the statute at issue, 18 U.S.C. § 922(g)(1), is constitutional in in *United States v. Dubois*, 94 F.4th 1284 (11th Cir. Mar. 5, 2024), however,

Appellant raises this issue in good faith. The Supreme Court's decision in *Rahimi*, necessarily rejected all arguments based on *Rozier* and *Dubois*, as to why *Rozier* continues to govern post-*Bruen* and preempt further Second Amendment analysis of §922(g)(1) cases under *Bruen*'s framework. Johnson maintains pursuant to Supreme Court decisions in *Bruen* and *Rahimi*, this Court should dismiss Count II of Johnson's Indictment, because 18 U.S.C. § 922(g)(1) is unconstitutional as applied to his non-violent prior felony driver's license convictions and it intrudes on his Second Amendment right to bear arms. The error is plain.

# ARGUMENT

## ISSUE I

> The district court imposed a procedurally unreasonable sentence when it prevented Johnson from articulating, and refused to consider, his objection regarding the allegations of his prior battery convictions; allegations which the court gave great weight in determining Johnson's sentence.

While beginning to discuss its reasoning behind the sentence, the district court made comments regarding Johnson's character and treatment of women. These comments were based on the district court's reading of the PSR summaries of arrest reports from Johnsons 2004 and 2007 battery convictions. *See*, ECF 45, ¶¶ 62, 67. The district court advised:

> The Court: I've heard you talk about how much your kids and your family mean to you. I've read the letters from your kids and your wife talking about how you're a family man. […] A family man doesn't batter their wives.
> […]
> The Court: [I]t is no measure for a man to beat a woman, and you have a history of doing that.

ECF 58, pp. 40, 44.

At that point, Johnson interjected and began to object to the district court's assumption of the accuracy of the narratives in the PSR. Johnson acknowledged he made mistakes in this case, however, "for me to sit and be like, okay, you beat your

wife – I don't beat my wife." After the district court explained that it was referring to the allegations in the PSR of his prior battery convictions against the mother of his children, Johnson started: "I haven't – I haven't beaten them, one of them. I told them, I say, if y'all could come to court and tell them the truth -- I was young then. I was young. I was scared. I didn't know nothing about a court. I would have fought that all the way to the door. I never put my hands on the women. Only thing I got on my hand is a scar for knocking on my window, on my window. And – " ECF 58, pp. 45-46. The district court then stopped Johnson from further articulating his objection and advised that it would not allow Johnson to contest the allegations. *Id.* Specifically, the district court used its authority to prohibit any further discussion regarding the matter, forcing Johnson to stand down.

> The Court: I'm reading Mr. – **I'm not going to debate it with you.**
> The Defendant: Oh, no, no.
> The Court: This happened – I'm looking at paragraph 65 of the PSR, just as an example. This was in 2007. […] **I'm not going to debate with you whether that happened.**
> The Defendant: Yes, yes sir.

ECF 58, p. 46 (emphasis added).

This was a procedural error that impacted the fairness and integrity of the sentencing hearing.

## A. The legal framework

Procedural error occurs by not allowing a defendant to fully articulate objections to the court's factual findings and legal conclusions. *United States v. Valera*, 622 F. App'x 876 (11th Cir. 2015) (finding that error occurred because the district court concluded the sentencing hearing without giving defendant the opportunity to object to its ultimate findings and legal conclusions).

> [T]he district court must give the parties an opportunity not only to resolve the objections contained in the addendum but also—after the court states its factual findings, applies the guidelines, and imposes sentence—to object to the district court's ultimate findings of fact and conclusions of law and to the manner in which the sentence is pronounced. This will serve the dual purpose of permitting the district court to correct on the spot any error it may have made and of guiding appellate review.

*United States v. Jones*, 899 F.2d 1097, at 1102 (11th Cir. 1990) (finding the district court's failure to "elicit fully articulated objections, following imposition of sentence, to the court's ultimate findings of fact and conclusions of law" from the defense violated procedural requirements).

This procedural requirement is especially important when the defendant is attempting to object to PSR narrative summaries the district court indicates will be relied on significantly in determining the defendant's sentence. Under this Court's precedent, Johnson has a right to object to facts written in the PSR, or else they are

deemed to be truthful and can be used in determining the imposed sentence. *See United States v. Clarke*, 836 F. App'x 818 (11th Cir. 2020); *see also United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024); *United States v. Corbett*, 921 F.3d 1032 (11th Cir. 2019). Therefore, the defendant's ability to object to PSR narrative summaries is critical to proper sentencing.

"The accuracy of the [PSR] is important, and the right of defendants to lodge objections to alleged factual inaccuracies in the [PSR] contributes to ensuring the accuracy of the [PSR's] information." *United States v. Funt*, 896 F.2d 1288, 1300 (11th Cir. 1990) (citing *United States v. Jones*, 856 F.2d 146, 149 (11th Cir. 1988)). This requirement promotes fundamental fairness by ensuring defendants are sentenced based upon reliable facts, a basic component of due process. *See, e.g., United States v. Tucker*, 404 U.S. 443, 447 (1972) (due process prohibits sentences which are based on unreliable or speculative findings). Narratives in the PSR are inherently unreliable because, many times, they are merely recitations of initial arrest reports that have not been tested by the adversarial process. *See Erlinger v. United States*, 144 S. Ct. 1840, 1855-56 (2024) (*Shepard* documents are "prone to error" and may contain "material gaps," particularly when adversarial testing appeared "unnecessary" and there was "good reason not to haggle" over errors which

seemed immaterial at the time); *United States v. Dantzler*, 771 F.3d 137, 147-49 (2d Cir. 2014) (district court errs in relying on prior court records incorporated in the PSR to the extent they lack the degree of certainty required by *Shepard v. United States*, 544 U.S. 13 (2005)).

This Court and other Circuits generally do not rely on arrest reports to support factual findings at sentencing when the facts are contested. *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012); *see also*, *Dantzler*, 771 F.3d at 146-49; *United States v. Zuniga*, 720 F.3d 587, 590-91 (5th Cir. 2013) (district court errs by relying on unreliable court records memorialized in the PSR *even in absence of objection by the defendant*); *United States v. Correy*, 570 F.3d 373, 382-84 (5th Cir. 2009) (district court errs by relying on mere recitation of allegations of the indictment in the PSR to determine drug quantity attributable to each co-defendant); *United States v. Parkerson*, 984 F.3d 1124, 1128-30 (5th Cir. 2021) (bare allegations in arrest report included in PSR are insufficient to support factual findings at sentencing).

## B. The district court procedurally erred by failing to allow Johnson to articulate his objection and failing to consider Johnson's objection.

Johnson made clear to the district court that the summaries in the PSR were not reflective of the actual events that took place, and of his desire to object to the

district court's understanding, interpretation, and reliance on those summaries. Johnson began his objection by informing the district court that he hadn't beaten anyone, including his wife nor the mothers of his children. He continued to say he was young, scared, and unfamiliar with the legal system at the time of the offenses; had he known better he would have fought those convictions. ECF 58, pp. 44, 45.

Furthermore, the instant record included additional information that gave Johnson's objection validity. The alleged victim in Johnson's 2004 battery conviction (D.M.) wrote in a letter to the district court stating that "[Johnson] has always been a good man," among sharing other kind and positive experiences. ECF 46—4. Her children wrote letters to the court showcasing the positive impact Johnson has had on them. ECF 46—5, 6, 7, 8. Defense counsel made plain to the district court that Johnson is a dedicated family man and takes pride in how he cares for his family. ECF 58—p. 25, 27, 28, 34. Of the many character letters provided to the court, Johnson is continuously described as a loving husband and great father figure. ECF 46. As examples:

> "Johnson is a devoted, loving, caring husband and father. […] [Johnson] is all about taking care of his family and making everyone come together." ECF 46-1.

> "Even though he's not my real dad he's always treated me and my siblings like his children. We love and respect

[Johnson], to be honest he's more of a father than my real dad. […] [Johnson] is honestly not a bad dad he is really funny and a caring person." ECF 46-2.

"My dad is also big on family[.]" ECF 46-7.

"[Johnson] always talked to me about his home life and his family. He loved his family very much and would do anything for them." ECF 46-9.

Thus, when the district court pronounced the sentence, there remained an unsettled and unheard valid objection regarding Johnson's prior criminal history and personal characteristics. The district court had a clear obligation to allow Johnson to fully articulate his objection, following the procedure announced in *Jones*. Nonetheless, the district court failed to do so. It explicitly prohibited Johnson from elaborating on his objection, took the narratives in the PSR as factual, and relied significantly on the objected facts when determining the imposed sentence. This was procedural error.

## C. The case should be remanded for resentencing.

Because the district court disregarded Johnson's right to object to the PSR summaries used to enhance his sentence, the district court erred procedurally. There is a reasonable probability that the objected to summaries, once favorably resolved, would have reduced Johnson's overall sentence. The PSR battery summaries were central in the district courts analysis of his criminal history and future

dangerousness. The district acknowledged this when it continued to discuss the allegations of the current case in conjunction with the allegations from 2007, immediately after preventing Johnson from contesting the factual allegations and explained "… I'm going through this process not to make you feel bad, not to bring up the worst times in your life, but to explain to you, **explain to the appellate court**, explain to the people that are here what I've taken into consideration in evaluating what your sentence is." ECF 58, pp. 46-47 (emphasis added).

There is a realistic possibility that the district court sentenced Johnson without a full picture of the underlying facts surrounding those priors. Therefore, this Court must remand the case for resentencing.

## ISSUE II

> The district court imposed a substantively unreasonable sentence when it imposed a top of the Guidelines sentence based, in substantial part, on inaccurately weighed sentencing factors.

"[A] district court commits a clear error in judgment when it weighs [the § 3553(a)] factors unreasonably, arriving at a sentence that does not achieve the purposes of sentencing as stated in § 3553(a)." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (citations omitted). Section 3553(a) mandates that the

sentencing court "shall impose a sentence sufficient, but not greater than necessary."

> A sentence may be substantively unreasonable when a court unjustifiably relies on any single § 3553(a) factor, fails to consider pertinent § 3553(a) factors, bases the sentence on impermissible factors, or selects the sentence arbitrarily.

*United States v. Grushko*, 50 F.4th 1, 19 (11th Cir. 2022) (citing *United States v. Pugh*, 515 F.3d 1179, 1191-92 (11th Cir. 2008)).

In making this analysis, this Court should "review each step the district court took" in making the sentencing calculus, and then make the sentencing calculus itself. *Irey*, 612 F.3d at 1189. An appellate court reviews a criminal sentence's substantive reasonableness under an abuse-of-discretion standard. *United States v. Fox*, 925 F.3d 1275, 1278 (11th Cir. 2019) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)).

### A. The district court improperly gave significant weight to disputed, unsubstantiated, and unreliable allegations in the PSR regarding Johnson's prior battery convictions.

A defendant's prior criminal record is a permissible sentencing consideration. 18 U.S.C § 3553(a)(1). But here, as stated in *Issue I*, Johnson objected to the underlying facts as recited in the PSR, and the district court stopped Johnson, refusing to allow him to contest the allegations in the narratives. Instead, the district

court used the unsubstantiated, disputed facts to impose a hefty, top of the Guidelines, sentence. The district court erred.

Narratives in the PSR are unreliable and merely recitations of arrest reports, not factual statements validated through the adversarial process. *See Erlinger v. United States*, 144 S. Ct. 1840, 1855-56 (2024) (*Shepard* documents are "prone to error" and may contain "material gaps," particularly when adversarial testing appeared "unnecessary" and there was "good reason not to haggle" over errors which seemed immaterial at the time); *United States v. Dantzler*, 771 F.3d 137, 147-49 (2d Cir. 2014) (district court errs in relying on prior court records incorporated in the PSR to the extent they lack the degree of certainty required by *Shepard v. United States*, 544 U.S. 13 (2005)). These PSR summaries do not provide any indication as to whether Johnson was found guilty of the facts as alleged in the PSR. Johnson's convictions of battery do not imply the facts happened as the PSR narrative recounts. Importantly, Johnson entered no contest pleas in both convictions and thus no admissions were made in the original court proceedings. Further, he informed the district court that he disputed the allegations and indicated that he had never hit anyone. Thus, the narratives in the PSR are no more than unreliable, disputed allegations of criminal conduct. Nonetheless, the district court

took them as factual and gave them significant weight, while understanding Johnson disputed their veracity.

Whether or not the district court substantially increased Johnson's sentence based on the battery priors is not merely an assumption. *See* ECF 58, pp. 42, 46-47. The Court must vacate the judgment of the district court on Count I and remand the matter to the district court for resentencing.

## B. The district court gave no consideration to Johnson's serious medical health conditions.

The sentencing statute mandates that a sentencing court must consider the personal characteristics of a defendant being sentenced. 18 U.S.C. § 3553(a)(1) and (2)(D). Yet, according to the district court's reasoning for the sentence imposed, this significant factor was not considered in reaching a sentence that was "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). The district court made no mention of Johnson's health whatsoever.

At the time of sentencing, Johnson was a 37-year-old man suffering from Type II diabetes, hypertension, asthma, and high cholesterol. ECF 45, ¶¶ 105, 106. He is insulin dependent, requiring four insulin shots daily to manage his diabetes, prescribed Lisinopril and gabapentin for his hypertension, and an inhaler for his asthma. Johnson reported the current offense occurred during a "diabetic blackout."

ECF 45, ¶ 105. At the time of his arrest, Johnson produced elevated blood sugar readings, requiring immediate transportation to a hospital via ambulance. ECF 45, ¶ 105. Johnson's health/personal characteristics clearly were not included in any analysis of determining an appropriate sentence, as required by 18 U.S.C. § 3553(a).

A district court commits substantive error, and abuses its discretion, "when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Irey*, 612 F.3d at 1189. Thus, the district court here committed a clear error in judgment when it weighed the § 3553(a) factors unreasonably, arriving at a sentence that does not "achieve the purposes of sentencing as stated in § 3553(a)." *Id*.

The district court did that in this case when it relied on disputed, unsubstantiated narratives in the PSR and failed to consider Johnson's serious health conditions. Therefore, this Court must vacate Count I of the judgment and remand the case for resentencing.

**ISSUE III**

> The trial court erred, plainly, when it imposed a judgment
> of conviction for the offense of possession of a firearm by a
> convicted felon, in violation of 18 U.S.C. § 922(g)(1),
> because it lacked jurisdiction to do so as the statute violates
> the Second Amendment as applied to Johnson's non-
> violent prior Florida felony driver's license convictions.

This Court adhered to its decision in *United States v. Rozier,* 598 F.3d 768

(11th Cir. 2010), in *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024) finding 18

U.S.C. § 922(g)(1) constitutional. However, for the reasons detailed below, in *United*

*States v. Rahimi*, 144 S. Ct. 1889 (June 21, 2024), the Supreme Court necessarily

rejected all of the government's arguments based on *Rozier*, and the arguments in

*Dubois* as to why *Rozier* continues to govern post-*Bruen* and preempt further Second

Amendment analysis of §922(g)(1) cases under *Bruen*'s framework. As such,

whether §922(g)(1) is unconstitutional as applied to Johnson's felony convictions

after *Bruen/Rahimi* is a question of first impression the Court must consider

unhampered by *Rozier* and *Dubois*—neither of which applied the newly-mandated,

now-clarified, *Bruen* methodology.

Pursuant to *Bruen* and *Rahimi*, this Court should dismiss Count II of

Johnson's Indictment, because 18 U.S.C. § 922(g)(1) is unconstitutional as applied

to his non-violent prior felony driver's license convictions and it intrudes on his

Second Amendment right to bear arms. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); *United States v. Rahimi*, 144 S. Ct. 1889 (2024).

In *Bruen*, the Supreme Court held that regulations governing conduct falling within the Second Amendment's plain text are "presumptively" unconstitutional unless the government can "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. 2111 (2022). The Supreme Court then established a two-step analysis governing Second Amendment cases: (1) if the "Second Amendment's plain text covers an individual's conduct," then "the Constitution presumptively protects that conduct" *id.*; and, (2) to rebut this presumption, the burden is on the government to show that a challenged law "is consistent with the Nation's historical tradition of firearm regulation." *Id.* The test for historical consistency is demanding: "a firearm regulation is consistent with American tradition only if similar regulations were widespread and commonly accepted in the founding era, when the Second Amendment was adopted." *Id.* at 2137.

**A. The Second Amendment's "plain text" covers Johnson's conduct.**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not

be infringed." U.S. Const. Amend. II. Thus, the amendment covers Johnson's conduct of possessing a firearm in his home—as charged in Count II of the Indictment.

This Court has recognized the term "people" in the Second Amendment is *not* textually limited to law-abiding citizens. *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022) (noting even "dangerous felons" are "indisputably part of 'the people'" for Second Amendment purposes). *Rahimi* rejected the government's argument that "the people" is limited only to "law abiding, responsible" citizens. 144 S. Ct. 1889 (2024). In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court found that "the people" protected by the Second Amendment were "all Americans." *Id*. at 580-581.

Because Johnson is among "the people" covered by the Second Amendment's plain text, under *Bruen* Step One, 18 U.S.C. § 922(g)(1) is presumptively unconstitutional. ["W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the burden is on the government to show that a law proscribing such conduct is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

**B. The government cannot show that 18 U.S.C. § 922(g)(1), as applied to non-violent felony convictions for driver's license offenses, is consistent with America's "tradition of firearms regulation."**

Where an individual's conduct is presumptively protected by the Second Amendment's plain text, a regulation restricting that fundamental right can only stand where the Government shows it "is consistent with the Nation's historical tradition of firearm regulation," that is, the tradition in existence "when the Bill of Rights was adopted in 1791." *Bruen*, 597 U.S. at 37. Here, the government cannot identify any historical tradition that would justify disarming someone with the kind of non-violent felony conviction on Johnson's record: felony driving while license revoked as a habitual offender.

Johnson was charged in the instant case with 18 U.S.C. 922(g)(1), which criminalizes possession of a firearm by a person who has been convicted of an offense punishable by at least one year of imprisonment. The felony listed in Johnson's Indictment was a 2020 Florida Driving While License Revoked Pursuant to Habitual Offender. Under Florida state law, this offense is a felony merely due to receiving multiple traffic citations (all of which were non-violent) within a specific period. It is solely a status offense. Johnson's first driving while license revoked offense, which began the accumulation, stemmed from failure to pay court cost. Based on his non-

violent, non-dangerous felony convictions, Johnson now faces a lifetime of disarmament. *See* 18 U.S.C. § 922(g)(1).

The government is not able to prove that individuals lacking a valid driver's license while driving is presumably dangerous, possess a threat to public safety or that this nation has a long-term, firearm regulation tradition of permanently disarming them. Since the government is unable to meet its burden, the statute is therefore unconstitutional. *See Range v. Att'y Gen. U.S.*, 69 F.4th 96, 106 (3rd Cir. 2023), *cert. granted, judgment vacated sub nom. Garland v. Range*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024) ("Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.").

### C. In light of *Rahimi*, *Rozier* and *Dubois* are incorrectly decided.

As noted above post-*Bruen,* but prior to *Rahimi*, this Court in *Dubois* continued to follow the pre-*Bruen* approach of *Rozier*. In declining to conduct *Bruen*'s new two-step analysis for Second Amendment challenges, viewing that as "foreclose[d]" by *Rozier*, 94 F.4th at 1291—and rejecting the suggestion that *Bruen* had abrogated *Rozier*, *id.*—the *Dubois* Court cited, as determinative, the dicta from

*Heller* quoted *supra*. *See Dubois,* 94 F.4th at 1291-93 (stating the Supreme Court had "made it clear" in *Heller*, 554 U.S. at 626-27 & n. 26, that its holding "did not cast doubt" on felon-in-possession prohibitions," which were "presumptively lawful;" and made clear in *Bruen*, 597 U.S. at 17, that its holding was "'[i]n keeping with *Heller*'."). Importantly though, the *Dubois* Court <u>did</u> leave the door open to reconsideration stating: "We require clearer instruction from the Supreme Court before we may reconsider the constitutionality of section 922(g)(1)." 94 F.4th at 1293.

And indeed, in *Rahimi*, the Supreme Court provided very clear instruction to this Court as to the post-*Bruen* required methodology—instruction that directly undercuts the assumptions, reasoning, and approach of both *Rozier* and *Dubois*. After *Rahimi*, neither *Rozier* nor *Dubois* can "foreclose" Johnson's post-*Bruen* challenges.

The Supreme Court made undeniably clear in *Rahimi* that: (1) *Bruen* indeed set forth a new methodology for Second Amendment analysis that lower courts must follow, and (2) *Rahimi* "clarified" that methodology. Every member of the Court agreed on those points. *See* 144 S. Ct. at 1891 (Roberts, C.J., writing for the majority) ("As we explained in *Bruen*, the *appropriate analysis* involves considering whether the challenged regulation is consistent with the principles that underpin our

35

regulatory tradition. A court *must ascertain* whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance stuck by the founding generation to modern circumstances.") (internal citations to *Bruen* omitted; emphasis added).

It is indisputable that *Rozier* did *not* comply with *Bruen*'s later-announced, text-and-historical tradition methodology. And neither did *Dubois*. Nor did they require the government to identify any Founding era analogues, in order to determine whether it had proved a consistent historical tradition of regulation dating to the Founding that was either distinctly similar, or at least, relevantly similar because it was both "comparably justified" and imposed a "comparable burden," as *Bruen* newly-mandated and *Rahimi* confirmed is indeed now the law.

Relatedly, the *Rahimi* Court squarely "reject[ed] the Government's contention" that legislatures can disarm anyone who is not "responsible." 144 S. Ct. at 1903. And notably, the *Dubois* Court expressly accepted that now-definitively-rejected contention. *See* 94 F.4th at 1293 (underscoring that "*Bruen*, like *Heller* repeatedly described the [Second Amendment] right as extending only to 'law-abiding responsible citizens'") (citations omitted).

**D. The error was plain.**

Under the plain-error standard, this Court will not correct an error raised for the first time on appeal unless there is an error that is plain; that affects substantial rights; and that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013). The constitutional error in this case meets that standard.

For the reasons detailed above, the error was plain because it violates the unambiguous language of the Second Amendment. Further, it affects Johnson's substantial rights (his right to bear arms) and seriously affects the fairness of the judicial proceedings. As such, Johnson should not have been convicted of the crime.

Post *Bruen* and *Rahimi*, this Court should hold 18 U.S.C. § 922(g)(1) unconstitutional as applied to Johnson's felony driver's license convictions and vacate his conviction on Count II.[1] As a result, the district court plainly erred in entering a judgment of conviction against Johnson in Count II.

---

[1] The Sixth Circuit has recently adopted a "dangerousness" standard that allows a defendant to prevail on an as-applied Second Amendment challenges upon showing the district court that he is not dangerous. *United States v. Williams*, No. 23-6115 (6th Cir., August 23, 2024)(recommended for publication).

## CONCLUSION

Based on Issue I and II, this Court must vacate the judgment and remand the matter to the district court for resentencing on all counts; and, based on Issue III, the Court must vacate the conviction on Count II of the Indictment because the federal felon-in-possession statute, as applied to Johnson, violates his rights under the Second Amendment.

Respectfully submitted,

*/s/ Joseph F. DeBelder*
JOSEPH F. DEBELDER
Federal Public Defender
Florida Bar No. 193800
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, Florida 32301
(850) 942-8818
(850) 942-8809 (fax)
joseph_debelder@fd.org

*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[**X**] this brief contains 7587 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[**X**] this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Equity A, 14 point, or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

*/s/ Joseph F. DeBelder*
JOSEPH F. DEBELDER
Federal Public Defender
Florida Bar No. 193800

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished electronically in Acrobat format by Internet upload to this Court, to Assistant United States Attorney Jennifer Callahan, and to Assistant United States Attorney Robert Davies; and by U.S. Mail to Foster D. Johnson, Reg. #32263-510, FCI Coleman Medium, P.O. Box 1032, Coleman, FL 33521 all on this 30th day of August 2024.

*/s/ Joseph F. DeBelder*
JOSEPH F. DEBELDER
Federal Public Defender
Florida Bar No. 193800